FILED
12/1/2021 7:55 PM
JOHN F. WARREN
COUNTY CLERK
DALLAS COUNTY

CAUSE NO. CC-21-05230-C

| | | |
|---|---|---|
| **JANE DOE,** § | | IN THE DALLAS COUNTY |
| § | | |
| **Plaintiff,** § | | |
| § | | |
| vs. § | | COURT AT LAW |
| § | | |
| **ROBERT LOVELL and HOME MARKETING SERVICES, INC. d/b/a HMS, INC.,** § § § | | |
| § | | NO. _____ |
| **Defendants.** § | | |

## PLAINTIFF'S ORIGINAL PETITION

Jane Doe ("Plaintiff" or "Jane Doe") files this Original Petition ("Petition" or "Pleading") against Robert Lovell ("Lovell") and Home Marketing Services, Inc. d/b/a HMS, Inc. ("HMS") (Lovell and HMS collectively referred to as "You," "Your," or "Defendants") in the above-referenced lawsuit (hereinafter this "Action") and shows:

### WHAT THIS LAWSUIT IS ALL ABOUT

1.  For two years, Robert Lovell, President and owner of HMS, frequently pressured a female employee that Lovell directly supervised, and whose employment he controlled, to submit to his deviant sexual demands.

2.  Lovell's public persona in his "bless your heart" commercials portray him as a kind, gentle, caring grandfather. The truth is he is nothing but a dirty old man who preys on young, female employees. Lovell's false public persona hides the darker truth of his grooming, manipulating, and female employees. And in particular, he required Plaintiff Jane Doe to submit to his demands for oral sex and intercourse *in the office, during business hours*. When demanding sexual favors from his female employees, Lovell uses the code phrase "my zipper is tight," "I need help with my zipper."

3. Recently, Jane Doe stood up to Lovell and refused his demand for oral sex in the office. In retaliation, *within minutes*, Lovell cancelled Plaintiff's daughter's health insurance.

4. Plaintiff then filed a discrimination charge with the Texas Workforce Commission (TWC) for sexual harassment and retaliation, and hired an attorney. However, that did not stop Defendants' retaliation. Lovell and HMS began a campaign of retaliation to make Plaintiff's work environment so intolerable that she has no other choice but to quit. Lovell and HMS's employees gave Plaintiff the silent treatment and shunned her. Lovell went out of his way to embarrass Plaintiff. Lovell and HMS began changing office policies to intimidate Plaintiff and reduced the crucial customer leads previously given to her. Those leads come directly from Lovell, but he stopped the normal course of providing those leads to Plaintiff because Defendants knew that without enough customer leads Plaintiff would be unable to make any money in Defendants' commission-only compensation system.

### IDENTIFICATION INFORMATION REQUIRED BY TCPR §30.014

5. The last three digits of Plaintiff's Texas Driver's License number are 653 and the last three digits of the Plaintiff's social security number are 547.

6. Defendant HMS does not have a Texas Driver's License or social security number because it is a corporate entity.

7. The last three digits of Defendant Lovell's Texas Driver's License and social security number are unknown.

### MONETARY CATEGORY

8. Pursuant to Texas Rule of Civil Procedure 47, this matter should be assigned to category 4 (monetary relief over $1,000,000).

9.      At the time of filing this Pleading, the damages are continuing and increasing. Plaintiff's investigation is continuing. Accordingly, the monetary category is an estimate at this time and is subject to being increased, decreased, or otherwise amended.

## DISCOVERY CONTROL PLAN

10.     Discovery should be conducted under Level III pursuant to Texas Rule of Civil Procedure 190.4 and a Motion is hereby made for entry of a Level III Scheduling Order.

## THE PARTIES

11.     Plaintiff is a is an individual who resides in Dallas, Dallas County, Texas.

12.     Defendant HMS is a Texas corporation duly qualified to do business in the State of Texas. Defendant HMS's principal office and principal place of business is 14140 Midway Rd., Suite 201, Dallas, Texas 75244.

13.     Defendant HMS's registered agent is Robert Lovell at 14140 Midway Road, Suite 201, Farmers Branch, TX 75244.

14.     Defendant Lovell is an individual who resides in Denton County, Texas

## SERVICE

15.     Defendants may be served by serving this Pleading, citation, and service upon the appropriate person and/or entity upon whom service can be obtained.

## JURISDICTION AND VENUE

16.     You committed torts and were doing business in Dallas County, Texas at all times relevant to this Action and did business in Dallas County, Texas that caused the injuries and damages that are the subject of this Action. Therefore, jurisdiction and venue are proper in

Dallas County, Texas. As a direct and proximate result of Your actions and/or inactions, damages in excess of the minimum jurisdictional requirements of this Court were incurred. The damages suffered include, but are not limited to, Plaintiff suffering physical injury, mental anguish, and loss of earnings.

17. Plaintiff has met all procedural prerequisites of bringing this claim. Plaintiff filed a Charge relating to these violations with the TWC on November 9, 2021 and amended Charges on November 11, 2021 and November 16, 2021 and has received a Right to Sue letter relating to these charges. Further, Plaintiff is within all applicable statutes of limitations for bringing this Action.

18. All conditions precedent to all relief being sought by Plaintiff in this Action have been met, performed, occurred, and/or been waived.

## FACTS

**Lovell Entices Plaintiff to Quit Her Job and Work for Lovell & HMS**

19. In or around August of 2019, Plaintiff visited Defendants' office and Lovell told Plaintiff that she should quit her job and work for Defendants. Lovell offered to pay for the Plaintiff's real estate classes so she could become employed as a real estate agent working for Lovell. Lovell insisted that Plaintiff would make a significant amount of money as a real estate agent working for Defendants. Lovell also told Plaintiff that Lovell would help Plaintiff grow in the real estate field and advance her career.

20. Plaintiff completed the real estate courses and Lovell induced Plaintiff to quit her existing job in reliance on Lovell's representations. Defendants hired Plaintiff as a real estate agent. Lovell assigned an office for Plaintiff and then insisted that Lovell would personally train Plaintiff.

21.     Others in the office warned Plaintiff that (a) she would need to personally be in the office and (b) if Lovell didn't like an employee, then Lovell would reduce or stop providing customer leads to that employee. Lovell providing leads was crucial to HMS employees' success in general, and Plaintiff's success at HMS in particular. Leads were how agents employed at HMS made sales and received compensation in Defendants' commission-only based pay system. Lovell controlled the hours, location, and details of Plaintiff's work.

**Lovell Grooms, Harasses, and Requires Sexual Favors from Plaintiff**

22.     Over time Lovell began "confiding in" Plaintiff about his marriage. Lovell complained about his marriage in general. Lovell specifically complained that he lacked a sexual relationship with his wife because she did not enjoy intercourse or giving him oral sex. Lovell said that he missed oral sex.

23.     Lovell's comments inferred that he had really hired Plaintiff for sex. Lovell also warned Plaintiff that Lovell controlled Plaintiff's entire ability to make any money at HMS after Lovell encouraged Plaintiff quit her other job and instead work for HMS. Lovell made additional comments and pressured Plaintiff. Fearing she would lose her job and not be able to provide for her 13 year-old daughter (who lives with her at home) and 72 year-old mother, eventually Plaintiff gave in to Lovell's demands for oral sex in the office.

24.     Plaintiff is a single mother and sole breadwinner for her 13 year-old daughter and 72 year-old mother and relied on her employment with HMS, which she understood depended on her continuing to submit to Lovell's sexual demands – and he took advantage.

25.     Lovell then continued making sexual advances, requiring oral sex, fondling and kissing Plaintiff's breasts, and eventually intercourse—often ***in HMS's offices, during office***

*hours* with Lovell's office door locked. Lovell often demanded these sexual favors before he would provide customer leads to Plaintiff.

26. Lovell became increasingly blatant about the connection between providing more or fewer leads to Plaintiff and requiring sexual favors in return. For example, when Plaintiff noted that she had not recently received many quality leads, Lovell would quickly bring Plaintiff into an office, lock the door, take his pants off, and require oral sex.

**Defendants' Intimidation and Quiet Complaints From Others**

27. Lovell also used intimidation. For example, Lovell told Plaintiff and others that a former employee needed a "bitch slap" after she hired a lawyer. Lovell warned employees he would be suing the former female employee for making a complaint and that his lawyers would aggressively go after the former employee to recover compensation paid to her.

28. Others in the office quietly expressed similar concerns about Lovell.

   a. One female co-worker stated that Lovell repeatedly asked to see her breasts.

   b. Plaintiff's oldest daughter (age 30), who works approximately 20 hours per month remotely, as a consultant, was required to visit Defendants' office once a quarter. Lovell made comments to Plaintiff's daughter--who at the time was breast-feeding her newborn at home, about the size of Plaintiff's daughter's breasts. After those inappropriate comments that employee never sat in an office with Lovell without another person being present.

29. Bob Lovell has been known to get drunk and super blasted and harass women at Sherlock's Baker St. Pub & Grill located at Dallas North Tollway and Belt Line Road.

**Defendants Harass and Retaliate Against Plaintiff**

30. As Plaintiff's relationship with her boyfriend (now her fiancé) became strong, Plaintiff began refusing Lovell's sexual demands. When Plaintiff began refusing Lovell's demand for sexual favors, her customer leads were reduced in quality and quantity.

31. On October 28, 2021, as Lovell had done previously when he wanted oral sex, asked Plaintiff, "Have you looked at my zipper?" "I need some help with it." Then he said, "My zipper is too tight. My zipper is bothering me."

32. Plaintiff attempted to ignore Lovell's comments, but Lovell closed the door to his office and repeated similar comments in a sterner voice. Plaintiff informed Lovell that she was not willing to perform oral sex. In response, Lovell stated, "Well then, what are we going to do about paying for your daughter's insurance?"

33. Lovell then called HMS's Office Administrator on the phone and asked her to come into his office. When the Office Administrator arrived, Lovell asked "how much am I paying for Plaintiff's daughter's insurance?" The Office Administrator responded, "I don't know, I'll have to go look it up." She returned within minutes and handed Lovell a piece of paper and said, "you're paying $414 per month for that insurance." Lovell turned to Plaintiff Jane Doe, looked at her sternly, and said to the Office Administrator, "cancel that insurance effective November 1."

34. Lovell and HMS followed through on that retaliatory threat and cancelled Plaintiff's 13 year-old daughter's insurance. Attached as Exhibit "A" is a redacted copy of the proof that Defendants cancelled Plaintiffs daughter's insurance in retaliation for Plaintiff's refusal to have oral sex with Lovell.

35. Plaintiff returned to her office and her co-workers saw Plaintiff crying. A few of them comforted Plaintiff and said Lovell seemed "jealous" that Plaintiff was engaged to another man.

36. The following Monday, Lovell brought Plaintiff into a meeting (also attended by office administrator) where Lovell told Plaintiff her sales numbers were not good and called her a "dumb blonde." Plaintiff then asked Lovell if they could discuss what he did to her on October 28. Lovell immediately told the office administrator to leave the meeting, but Plaintiff insisted the administrator stay in the meeting. Lovell then calmed down and changed the topic.

37. Plaintiff filed a charge of discrimination for sexual assault (the "Charge") with the TWC's Civil Rights Division on November 9, 2021, and that same day provided a copy of the Charge to Mr. Lovell and HMS.

38. The next day, only one HMS employee ("Greg") talked with Plaintiff while she was working in Defendants' offices. This was highly unusual that only one person would say hello. Greg told Plaintiff that Lovell held a private meeting with the office administrator and other HMS employees; and that Greg had not yet been called in for a meeting. Greg and Plaintiff talked briefly and discussed their lunch plans. Lovell met with Greg, and Greg later brought Plaintiff's lunch to her, but said he couldn't sit with Plaintiff to eat, which was highly unusual.

39. Throughout the day, Plaintiff saw Lovell walking with each co-worker individually, and talking to them. No one spoke to Plaintiff or ate lunch with Plaintiff like they normally did. For the rest of the day, none of her Plaintiff's co-workers spoke with Plaintiff. Defendants' employees gave Plaintiff the silent treatment. Defendants' employees avoided contact and conversations with Plaintiff. It appears that Lovell had told HMS's employees to shun Plaintiff, because it was so unusual for no one to speak with Plaintiff.

40. Since filing the Charge, Plaintiff received far fewer customer leads than she received before she filed the Charge, while other similarly situated employees received many more leads. Defendants also began other forms of retaliation against Plaintiff, including, but not limited to, changing policies without telling Plaintiff, holding meetings without Plaintiff, and refusing to communicate with Plaintiff.

**Failure to Investigate**

41. It's been 23 days since Defendants received Plaintiff's TWC charge. Pursuant to the new Texas law "an employer commits an unlawful employment practice if sexual harassment of an employee occurs and the employer or the employer's supervisors fail to take *immediate* and appropriate corrective action." To date, Defendants made no effort to take *any* corrective action after Plaintiff complained and filed the TWC Charge for sexual harassment.

42. Defendants haven't even interviewed Plaintiff regarding her complaint of sexual harassment!

43. Instead, Defendants have covered up Lovell's--the company owner's--misdeeds, retaliated against Plaintiff, ostracized Plaintiff, significantly reduced Plaintiff's ability to make a living, and refused to respond to Plaintiff's basic requests for information about hours and work conditions.

**Lovell and HMS' Potential Fraud Against HMS's Customers**

44. Lovell has also berated agents if they sold a home that was not built by Bloomfield or Highland. Lovell was especially enraged if HMS agents sold preexisting homes (not new construction), or homes built by Historymaker or Lennar. For example, Lovell recently threatened to fire an HMS employee after that HMS employee represented a customer who

bought a home built by Lennar. Defendants have not disclosed to Plaintiff whether there is any undisclosed kickback, commission, or rebate paid by Bloomfield or Highland to Defendants, nor (to Plaintiff's knowledge) has any such kickbacks been disclosed to Defendants' clients.

### CAUSE OF ACTION: SEXUAL HARASSMENT UNLAWFUL EMPLOYMENT PRACTICE

45. Pursuant to Texas state law, a cause of action is pled against You under Tex. Labor Code §21.142.[1] Sexual harassment of Plaintiff occurred and Defendants: (a) knew or should have known that the conduct constituting sexual harassment was occurring; and (b) failed to take immediate and appropriate corrective action.

46. Lovell's unwelcome sexual advances, demands for oral sex, requests for sexual favors--*in the office during working hours*, and other verbal or physical conduct of a sexual nature were repeated. And/or, Defendants made Plaintiff's submission to the advance, request, or conduct a term or condition of Plaintiff's employment, either explicitly or implicitly. And/or, Plaintiff's submission to or rejection of the advance, request, or conduct by Lovell was repeatedly used as the basis for a decision affecting Plaintiff's employment. And/or, Lovell's advance, request, or conduct had the purpose or effect of unreasonably interfering with Plaintiff's work performance. And/or, Lovell's advance, request, or conduct has the purpose or effect of creating an intimidating, hostile, or offensive working environment.

---

[1] Sec. 21.142. UNLAWFUL EMPLOYMENT PRACTICE. An employer commits an unlawful employment practice if sexual harassment of an employee occurs and the employer or the employer's agents or supervisors:
  (1) know or should have known that the conduct constituting sexual harassment was occurring; and
  (2) fail to take immediate and appropriate corrective action.

47. As a direct and proximate result of Your conduct as described above, Plaintiff suffered severe mental anguish and other damages in excess of the minimum jurisdictional limits of this Court.

## CAUSE OF ACTION: BATTERY

48. Pursuant to Texas state law, a cause of action is pled against Lovell for battery. The allegations contained in all of the paragraphs of this Pleading are hereby reaverred and realleged, for all purposes, and incorporated herein with the same force and effect as if set forth herein verbatim.

49. On several occasions preceding October 28, 2021, Lovell touched and molested Plaintiff in a harmful and offensive manner. Lovell's touching was without consent or privilege and against Plaintiff's wishes. Lovell had no permission or justification for Lovell's offensive and harmful touching. Lovell's actions were not casual, negligent, or accidental contact, but were a deliberate, intentional, harmful and offensive touching.

50. As a direct and proximate result of Lovell's wrongful conduct described above, Plaintiff suffered severe mental anguish and other damages in excess of the minimum jurisdictional requirements of this Court.

## CAUSE OF ACTION: HOSTILE ENVIRONMENT IN VIOLATION OF THE TEXAS COMMISSION ON HUMAN RIGHTS ACT

51. Pursuant to Texas state law, a cause of action is pled against You for sexually hostile environment in violation of § 21.051 of the TCHRA. The allegations contained in all of the paragraphs of this Pleading are hereby reaverred and realleged, for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

52. Plaintiff, while employed with You, was continually exposed to a sexually hostile work environment. Despite Plaintiff's complaints regarding such environment, You took no action to remedy the hostile environment.

53. Plaintiff filed the TWC Charge relating to these violations. Further, Plaintiff is within all applicable statutes of limitations for bringing this Action.

54. As a direct and proximate result of Your violation of TCHRA, Plaintiff was damaged in excess of the minimum jurisdictional limits of this Court.

## CAUSE OF ACTION: INTENTIONAL INFLICTION OF MENTAL DISTRESS

55. Pursuant to Texas state law, a cause of action is pled against You for intentional infliction of mental distress. The allegations contained in all of the paragraphs of this Pleading are hereby reaverred and realleged, for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

56. As a result of Your actions, omissions and policies, Plaintiff suffered or will suffer past, present, and future severe emotional distress. You acted intentionally and recklessly; Your conduct was extreme and outrageous in that it surpassed all possible bounds of decency and is utterly intolerable in a civilized community. Further, Your actions caused the Plaintiff emotional distress and the emotional distress suffered by Plaintiff was severe. Your outrageous conduct was made without privilege, permission, or consent.

57. As a direct and proximate result of Your outrageous conduct, Plaintiff was damaged in excess of the minimum jurisdictional requirements of this Court.

## CAUSE OF ACTION: FOR FAILURE TO
## INVESTIGATE A SEXUAL HARASSMENT COMPLAINT

58. Pursuant to Texas state law, a cause of action is pled against You for failure to investigate as required by Texas law. The allegations contained in all of the paragraphs of this Pleading are hereby reaverred and realleged, for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

59. At all times relevant to this Action, You owed a duty to Plaintiff to exercise reasonably prudent and ordinary care to immediately, fairly, and thoroughly investigate Plaintiff's allegations of sexual harassment and promptly take appropriate corrective action. You violated this duty by not investigating at all, not immediately investigating, and/or negligently investigating the Plaintiff's complaints, and by failing to act as a reasonably prudent person would have under the same or similar circumstances, including, but not limited to:

   a. Not immediately investigating Plaintiff's sexual harassment complaint;

   b. Not investigating and/or negligently investigating the Plaintiff's sexual harassment complaint;

   c. Failing to conduct a proper and thorough investigation of the Plaintiff's sexual harassment complaint; and

   d. By failing to act as a reasonably prudent person would have under the same or similar circumstances.

60. As a direct and proximate result of the acts complained of above, Plaintiff suffered damages in excess of the minimum jurisdictional requirements of this Court.

## CAUSE OF ACTION: RETALIATION IN VIOLATION
## OF THE TEXAS COMMISSION ON HUMAN RIGHTS ACT

61. Pursuant to Texas state law, a cause of action is pled against You for retaliation in violation of § 21.055 of the TCHRA. The allegations contained in all of the paragraphs of this

Pleading are hereby reaverred and realleged, for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

62. Plaintiff filed the Charge with the TCHRA. Subsequent to the filing of the Charge, Lovell, and HMS's supervisors and co-workers retaliated against Plaintiff for filing a TWC Charge. Despite Plaintiff's complaints regarding such retaliation, You took no action to curtail, correct, or stop the retaliation. The retaliatory conduct continued and You did not curtail or correct the retaliation.

63. Plaintiff is within all applicable statutes of limitations for bringing this Action.

64. As a direct and proximate result of Your retaliation, Plaintiff suffered damages in excess of the minimum jurisdictional limits of this Court.

### CAUSE OF ACTION: SEXUAL DISCRIMINATION IN VIOLATION OF THE TEXAS COMMISSION ON HUMAN RIGHTS ACT

65. Pursuant to Texas state law, a cause of action is pled against You for sexual discrimination in violation of the Texas Commission on Human Rights Act. Tex. Labor Code § 21.051 ("TCHRA"). The allegations contained in all of the paragraphs of this Pleading are hereby reaverred and realleged, for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

66. At all times relevant, Plaintiff was a member of a protected class.

67. At all times relevant, Plaintiff was qualified for the position Plaintiff held.

68. Plaintiff filed the Charge. Plaintiff is within all applicable statutes of limitations for bringing this Action.

69. As a direct and proximate result of Your unlawful discrimination, Plaintiff has suffered and will continue to suffer damages including, but not limited to, lost compensation, lost

employment benefits, loss of earning capacity, pecuniary losses, injury to Plaintiff's reputation and professional standing and emotional pain, which are in excess of the minimum jurisdictional limits of this Court.

70.     In addition, Plaintiff is entitled to recover compensatory/punitive damages from You because the clear and convincing facts of this Action demonstrate that You engaged in unlawful discriminatory practices with malice or with reckless indifference to Plaintiff's state-protected rights. Accordingly, Plaintiff asks that exemplary damages be awarded against You in a sum in excess of the minimum jurisdictional limits of this Court.

71.     Plaintiff was required to retain attorneys to prosecute this Action and has agreed to pay the retained attorneys a reasonable fee. Pursuant to §21.259 of the Texas Labor Code, Plaintiff is entitled to recover these fees along with costs of court.

## PUNITIVE DAMAGES

72.     As a consequence of the foregoing clear and convincing facts and the willful and malicious nature of the wrongs committed against the Plaintiff, which damaged her and her reputation, Plaintiff is entitled to exemplary damages, which exceed the minimum jurisdictional limits of this court.

## PUNITIVE DAMAGES – NO CAP

73.     A plaintiff who successfully prosecutes a suit by proving malice by clear and convincing evidence can recover exemplary damages under Section 41.003(a)(2) of the Texas Civil Practice and Remedies Code. Punitive Damages are sought for the malicious acts perpetrated by You in this case. Further, these malicious acts violated criminal statutes. Accordingly, the statutory caps are inapplicable.

## DAMAGES FOR MENTAL ANGUISH

74. As a direct and proximate result of Your actions or inactions and the willful and malicious nature of the wrongs committed against Plaintiff, Plaintiff suffered and will suffer past, present and future severe mental anguish. The damages for Plaintiff's mental anguish exceed the minimum jurisdictional limits of this Court.

## MISCELLANEOUS

75. The right to plead any and all claims, causes of action and/or theories in the alternative is invoked and all claims, causes of action, and/or theories of recovery are hereby plead, in the alternative, to the extent necessary. Demand is hereby made that the Official Court Reporter for this Court perform all the duties of the office, as set forth in Section 52.046 of the Government Code of the State of Texas, and as set forth in Rule 13 of the Rules of Appellate Procedure, including reporting all testimony and trial proceedings, voir dire examinations and jury arguments. The right to bring additional causes of action against and to amend this Action as necessary is hereby specifically reserved. All conditions precedent to all relief in this Action have been met, performed, occurred and/or waived.

76. Withing 30 days of a defendant's answer, the parties must automatically produce information and materials in TRCP 194.2, 194.3, and 194.4.

## JURY DEMAND

77. Demand is hereby made for this Court empanel a lawful jury to hear this case.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Prayer is hereby made that Defendant Bob Lovell and Defendant HMS be cited to appear and to answer herein and that upon final hearing, this Court enter judgment in favor of Plaintiff against Defendants, jointly and severally, in an amount in excess of the minimum jurisdictional requirements of this Court, for compensatory damages, punitive damages, reasonable attorneys' fees, reasonable paralegal fees, costs of court and pre- and post-judgment interest at the highest rate allowed by law, and also enter an order revoking any license enabling Defendants to operate in Texas and revoking any certificate authorizing Defendants to do business in Texas if any judgment rendered in this case has not been satisfied within three (3) months from the date of filing said final judgment, and for such other and further relief, general or special, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

_____
**ROGGE DUNN**
State Bar No. 06249500

Email: Dunn@righttowork.com

**GREG McALLISTER**
State Bar No. 24071191

Email: mcallister@RoggeDunnGroup.com

**ROGGE DUNN GROUP, PC**
500 N. Akard Street
Suite 1900
Dallas, Texas 75201
Telephone: (214) 888-5000
Facsimile: (214) 220-3833

**ATTORNEYS FOR PLAINTIFF**


# UnitedHealthcare

Proof of Lost Coverage Document

Wed Nov 17 2021

Dear ▓▓▓

Thank you for your request. Below is a summary of your coverage status with us.

| | |
|---|---|
| Group: | Home Marketing Services |
| Group #: | 02Q1243 |
| Employee Name: | ▓▓▓ |
| Employee ID: | 959969398 |

| Member name | Date of birth | Coverage period begin date | Coverage period end date |
|---|---|---|---|
| ▓▓▓ | ▓▓▓ | 2021-06-01 | 2021-10-31 |

What happens when my coverage ends?
When you lose coverage, you can enroll in another health plan that you're eligible for. This is called Special Enrollment. You need to enroll in a new plan within 30 days after your UnitedHealthcare coverage ends.

What are my options for coverage?
You may be eligible for one or more of the following:
•An individual health benefit plan through the Individual Marketplace. To find out more, go to healthcare.gov.
•COBRA, state continuation or conversion coverage. Please contact your employer to find out more information
•Coverage under a spouse's plan.

If you have questions about this email, please call the toll-free member phone number listed on your health plan ID card. TTY users can dial 711.

Sincerely,
The UnitedHealthcare Team


EXHIBIT A

Members that reside in the state of California, please refer to the following information.

**California Residents: Your Health Insurance Choices Are Different. You May Qualify for Free or Low Cost Health Insurance.**

Because of changes in federal law, the health insurance you have today may be changing. You can stay with UnitedHealthcare. You also have other choices. These may save you money.

You cannot be denied health insurance because you have health problems or a pre-existing condition, and your health insurance premiums cannot be based on your health status. You may also qualify for low cost or free health insurance for yourself or your dependents.

**Covered California**
You can buy health insurance through Covered California. The State of California set up Covered California to help people and families, like you, find affordable health insurance. You can use Covered California if you do not have insurance through your employer, Medi-Cal or Medicare.

You must apply during an open or special enrollment period. Your open enrollment can be found at https://www.coveredca.com/.If you have a life change such as marriage, divorce, a new child or loss of a job, you can apply during a special enrollment period.

Through Covered California, you may also get help paying for your health insurance:
•**Receive tax credits:**
You can use your tax credit to help pay your monthly premium.
•**Reduce your out of pocket costs:**
Out-of-pocket costs are how much you pay for things like going to the doctor or hospital or getting prescription drugs.

To qualify for help paying for insurance, you must:
•Meet certain household income limits
•Be a U.S. citizen, U.S. national or be lawfully present in the U.S.
•Other rules and requirements apply.

**Medi-Cal Is Changing Too**
Free health insurance is available through Medi-Cal. Medi-Cal is California's health care program for people with low incomes. Starting in 2014, you can get Medi-Cal if:
•You are less than 65 years old
•Your income is low
•You are a U.S. citizen, U.S. national or lawfully present in the U.S.

Your eligibility is based on your income. It is not based on how much money you have saved or if you own your own home. You do not have to be on public assistance to qualify for Medi-Cal. You can apply for Medi-Cal anytime.

To qualify for Medi-Cal if you are over 65, disabled or a refugee, other rules and requirements apply.

**For More Information**

To learn more about Covered California or Medi-Cal, visit www.CoveredCA.com or call a toll free telephone number: Main Phone #: 800-300-1506. You can also call or visit your county social services office.

Visit myuhc.com® to view your claims and Explanation of Benefits statements, look up benefits, update account information, find a physician or facility or learn more about healthy living. Registration is easy and gives you access to useful tools and information to help you take charge of your health and health care.